(27 App. Div. 14.)

### ST. JOHN v. TICONDEROGA PULP & PAPER CO.

(Supreme Court, Appellate Division, First Department. March 11, 1898.)

CONSTRUCTION OF CONTRACTS—BROKERS' COMMISSIONS.

    In an action for a broker's commission under a contract entitling him to a certain commission on all government orders for paper awarded to and filled by defendant, it was error to deny a motion for a nonsuit, where defendant's bid on certain paper had been accepted under a mistake of fact on the part of the officials, which was discovered before the contract was executed, and therefore no contract was awarded thereunder.

Appeal from trial term.

Action by Joseph L. St. John against the Ticonderoga Pulp & Paper Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and INGRAHAM, JJ.

F. A. Rowe, for appellant.
Martin A. Ryan, for respondent.

RUMSEY, J. The plaintiff was engaged, among other things, in procuring contracts between paper manufacturers and the treasury department of the United States government for furnishing to that department paper which was used in the various bureaus. He was accustomed to keep himself informed of the proposals of each bureau of the department for furnishing paper, and to advise paper manufacturers of these proposals, and procure them to bid upon the contracts offered by the government. On the 20th of April, 1895, a circular had been sent out by the internal revenue bureau asking for sealed proposals for furnishing that office with paper to be used in the printing of internal revenue stamps. This circular contained full directions as to the kind of paper to be furnished, prescribing its weight and quality, and the materials to be used in its manufacture, and expressly requiring that it should be equal in composition, size, strength, and calendering to the samples used in the printing of internal revenue stamps, which samples were not sent to the bidders, but were to be found in the office

of the commissioner of internal revenue. It required that there should be submitted with the proposals samples of the paper to be furnished at the prices indicated, and that these samples should be subjected to the usual tests as to strength and quality. The department reserved the right to reject all bids, and the secretary of the treasury testified that that right was exercised up to the time a written contract was signed. After this circular had been issued, the plaintiff made a contract with the defendant in the following words: "You [the defendant] to pay me [the plaintiff] 2½ per cent. on all government orders I have you bid on that are awarded to you; of course on orders you fill." The defendant sent sealed proposals to the department in answer to the circular, in which it agreed to furnish a particular quality of paper at the price of $3.74 per 100 pounds. The bid for this particular quality at this price was accepted by the government, but it appeared from the testimony that this acceptance was made under a mistaken belief on the part of the government officials that the paper contained in the sample which was presented was of the quality required by the proposals. It appears by the testimony that it is not a matter of course for a contract to be awarded, even after the bid has been accepted; and the acceptance was upon the understanding and condition that the proposed sample must contain the ingredients in the contract proposed by the department, and this bid was accepted under a mistaken belief on the part of the officials of the government that the sample did comply with those requirements. Before the contract was made, however, it was ascertained that that was not the case, and thereupon the department refused to execute the contract, but awarded it to some other person, by whom something over 510,000 pounds of paper were furnished to the government. The plaintiff insists that the moment the bid was awarded to this defendant he became entitled to 2½ per cent. on the price of the amount of paper furnished under the contract, whether it was furnished by the defendant in pursuance of the contract made by it, or by some other person upon another contract. He bases this contention upon the words of the agreement to pay "2½ per cent. on all government orders I have you bid on that are awarded to you," and his claim is that his right to commissions arose the moment that the bid was awarded, whether that award was followed by a contract and the delivery of the goods or not. During the trial, at the close of the plaintiff's case, and again at the close of the evidence, a motion for a nonsuit was made upon the ground that, as there never was any contract between the defendant and the government, the plaintiff's right to commissions did not arise. This motion was denied, and an exception was taken to the ruling of the court in that regard. The theory upon which the case was submitted to the jury was that whether the plaintiff was entitled to compensation or not depended upon the question whether he did or did not understand that the sample which he presented for the defendant did not come up to the requirements of the government circular. The court said that, if the plaintiff understood that that sample did not come up to the requirements of the circular, then he took the risk of the government ultimately refusing to give a contract for the paper, and was not entitled to commissions; but, on the contrary, if the plaintiff believed that the defendant's samples sent on

as a bid complied with the government requirements as specified in the circular, then he would be entitled to his commissions when the government accepted the bid. In this theory of the case we do not concur. The bid presented was subject to all the contingencies which accompany such proposals. The object of the bid was to secure a government contract, and the defendant did not obtain any benefit from the bid until the contract had been awarded to it. Whether it should be awarded depended not entirely upon the acceptance of the bid, but upon the willingness of the government to enter into the contract after the bid had been accepted, and no right on the part of the defendant to furnish the paper accrued until a contract had finally been entered into between it and the treasury department. The fair construction of the contract between the plaintiff and the defendant was that his right to commissions accrued, not when the bid was accepted, but when the contract proposed by the bid was finally awarded to the defendant, and then his right to commissions was to be measured by the orders which the defendant filled. Until that time, there were no relations between the department and the defendant, and no right to fill any orders, and consequently no duty on the part of the defendant to pay to the plaintiff any commissions because it could receive no orders to fill. It would have been different, undoubtedly, had the department been willing to award the contract to the defendant, and the defendant had refused to take it, because by such refusal it could not deprive the plaintiff of his right to the commissions which he had earned by procuring the defendant the privilege of entering into a contract which it had expressed itself as willing to take. But in this case the defendant was not at fault. It appears from the whole case that the bid was accepted by the department upon a mistake of the fact, it supposing that the sample paper attached to the bid complied with its requirements. If the truth of this had been understood, the bid would not have been accepted, and the department was at liberty to refuse to award the contract after the bid had been accepted, if it discovered that the sample did not comply with its requirements. Each of the parties must have been aware of that right, and the agreement to pay commissions was undoubtedly made in view of the fact that the government not only reserved the right to reject bids, but insisted upon its right to refuse to award contracts after the bids had been accepted. It will be noticed that the commissions were not to be paid on all bids accepted, but upon all bids awarded; and the bid was not awarded until the contract under it was finally made. So it will be noticed that, although a contract had been made, commissions were to be paid only on the orders that were filled under the contract. These things make it perfectly clear, as it seems to us, that within the fair meaning of the contract no right to commissions accrued until the contract was finally executed between the department and the defendant, and then only upon such orders as were filled by the defendant under that contract. For that reason the motion for a nonsuit should have been granted, and it was error to send the case to the jury.

The judgment and order must therefore be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.